IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES VARHOLICK, | ) | CASE NO. 1:12-cv-00033 |
| | ) | |
| Petitioner, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| WARDEN, MARION | ) | |
| CORRECTIONAL INSTITUTION, | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |

On January 5, 2012, Petitioner, James Varholick ("Petitioner" or "Varholick"), filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("Petition") (Doc. 1) challenging the constitutionality of his conviction and sentence in 2007 and 2009 in *State of Ohio v. James Varholick*, Case No. CR-485615, Cuyahoga County, for driving under the influence in violation of Ohio Rev. Code § 4511.19, a fourth degree felony.[1]  Doc. 1, p. 1; Doc. 4-4.

In his Petition, Varholick asserts two grounds for relief.  Doc. 1.  In Ground One, Varholick raises four separate due process claims which were raised in his direct appeal from his 2007 judgment of conviction.  Doc. 1-1, p. 1.  In Ground Two, Varholick raises a claim that he was denied access to the court with respect to a 2010 motion to correct sentence.  Doc. 1-1, p. 1.  This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2.[2]  Respondent contends that Varholick's Petition

---

[1] Varholick currently is incarcerated pursuant to a sentence imposed (in Cuyahoga County Court of Common Pleas Case No. CR-526692) to run consecutive to the sentence at issue in this case.  Doc. 4-34. Thus, this Court has jurisdiction.  *See Garlotte v. Fordice*, 515 U.S. 39, 45-46 (1995) ("'[A] prisoner serving consecutive sentences is 'in custody' under any one of them' for purposes of the habeas statute.")  (quoting *Peyton v. Rowe*, 391 U.S. 54, at 67 (1968)).

[2] The case was initially referred to United States Magistrate Judge Baughman but was reassigned to the undersigned

is time-barred.[3]  Doc. 4.  As explained below, Varholick's  Petition is barred by the one-year

statute of limitations in 28 U.S.C. § 2244(d)(1).  Accordingly, the undersigned recommends that

Varholick's Petition (Doc. 1) be **DENIED**.  Varholick's request for an evidentiary hearing

contained in his Traverse (Doc. 5) is **DENIED** as moot.

## I.  Factual Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment

of a state court, the state court's factual findings are presumed correct.  The petitioner has the

burden of rebutting that presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1);

*see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008), *cert. denied,* 129 S. Ct. 2878 (2009).

In its April 2, 2008, Journal Entry and Opinion affirming Varholick's conviction, the Eighth

District Court of Appeals summarized the facts underlying Varholick's conviction as follows:

> **[*P3]** The first witness that testified was a motorist ("Joe") who observed
> defendant driving on August 3, 2006 at approximately 3:15 p.m. Joe first noticed
> defendant's vehicle driving in front of his vehicle weaving off the center of Howe
> Road in Strongsville. A vehicle that was heading in the opposite direction had to
> swerve to avoid colliding with defendant's vehicle. It appeared to Joe that
> defendant was having a hard time navigating the road. Joe continued to follow
> defendant's vehicle. Joe telephoned the police to report defendant's erratic driving.
> Joe agreed to continue following defendant's vehicle. As defendant attempted to
> make a right-hand turn onto Boston Road, he ran over the reflectors that were on
> the roadside. Defendant continued driving erratically, slow and then fast, weaving
> to the right and then left. At times, defendant's vehicle was off the roadside into
> the gravel and others it was left of the centerline. Defendant's vehicle made an
> unnecessarily wide right-hand turn into Brittany Place and overshot the
> intersection. Defendant then parked his vehicle on the sidewalk and curb on the
> cul-de-sac. Joe had followed defendant's vehicle for about a mile. Joe identified
> defendant as the person who he saw operating the vehicle on August 3, 2006. Joe
> waited at the scene and continued to observe the defendant until the police arrived
> about nine minutes later. Joe wrote a brief statement for the police.

> **[*P4]** On cross-examination, Joe stated that he never smelled alcohol nor did he
> physically inspect defendant. When the police arrived, defendant appeared to be

---

Magistrate Judge pursuant to General Order 2012-3.

[3] Alternatively, Respondent argues that Varholick's grounds for relief are without merit.  Doc. 4.

2

"out of it." Defendant was not responding to the police officer who had to shake defendant to get his attention. Joe did not have any particular knowledge that defendant had consumed any alcohol. But, defendant was not conscious or awake when the police arrived. Joe did not see anyone else besides defendant get in or out of the vehicle. Joe did not see anyone approach the vehicle until the officers arrived.

[*P5] Officer Piorkowski of the Strongsville Police Department testified next. On August 3, 2006 he responded to a citizen complaint concerning the operation of a vehicle on Howe Road. The officer arrived at Brittany Place within ten minutes and found defendant in his parked vehicle and also observed the complainant's vehicle parked nearby. Defendant's vehicle was parked on the wrong side of the road.

[*P6] The officer's dash cam was operating as he approached defendant's vehicle. Defendant was slumped over behind the wheel of the vehicle. His eyes were shut. The vehicle was parked but the engine was still running. Defendant did not respond to the officer's verbal commands nor did he respond when the officer knocked on the vehicle. The officer then physically shook the defendant but defendant still did not respond. Defendant was breathing and did not appear to be in distress. The officer then called for a back-up unit. The officer walked around the back of the car over to the passenger's side to get the keys out of the ignition and turn the vehicle off. Once the officer returned to the driver's side of the vehicle, he was able to get a response from the defendant. Defendant was very dazed and confused. Defendant's eyes were very glassy and bloodshot. He was very disheveled. Defendant began to sit up slowly but would not answer the officer's questions. From the outset of the encounter, the officer had detected a moderate smell of alcoholic beverage coming from inside the vehicle. Defendant was the sole occupant of the vehicle.

[*P7] Defendant complied with the officer's request to step out of the vehicle. Defendant was not wearing any shoes as he stumbled out of the vehicle. The officer placed the defendant in handcuffs because he felt defendant's level of intoxication made him potentially unsafe. Defendant was placed on the grass until police back-up arrived at the scene. Defendant lost his coordination at least once and fell over.

[*P8] The officer identified defendant as the person he encountered in the vehicle on Brittany Place on August 3, 2006.

[*P9] When the back-up officer arrived, defendant was placed in the police car. The officer did not administer field sobriety tests due to defendant's lack of coordination. Although he attempted to administer the nystagmus test, he was unable to do so because defendant put his hands over his face completely and ducked down so that the officer could not observe defendant's eyes. Defendant was arrested for driving under the influence. The officers then inventoried and

3

towed defendant's vehicle. They did not find any alcoholic beverages inside the vehicle.

[*P10] Defendant refused to submit to the Intoxilyzer 5000 test on August 3, 2006.

[*P11] Defendant did not live in Strongsville and the officer was unaware of any reason for the defendant to be on Brittany Place on August 3, 2006.

[*P12] During cross-examination, Officer Piorkowski testified that he did not know when the defendant ingested the substances that caused his intoxication.

[*P13] Detective Steve Dzurisin also testified. He was assigned the case approximately a week after defendant's arrest and conducted the investigation on follow-up information concerning prior convictions. Dzurisin discovered that defendant had several prior convictions for driving under the influence. Dzurisin obtained journal entries of the prior convictions: two from Chardon Municipal Court and a third from Painesville Municipal Court. The entries are contained in the record as State's Exhibits 6 and 7.

*State of Ohio v. James Varholic*, 2008-Ohio-962, 2008 Ohio App. LEXIS 819, **1-6 (8th Dist. 2008); *see also* Doc. 4-14, pp. 3-7.

## II. Procedural Background

### A.    State Conviction

In August 2006, the Cuyahoga County Grand Jury indicted James Varholick[4] for driving under the influence, a violation of Ohio Rev. Code § 4511.19 (Count One) and drug possession, a violation of Ohio Rev. Code § 2925.11 (Count Two).  Doc. 4-2, Doc. 4-4.  Varholick pled not guilty (Doc. 4-3, p. 6) and waived his right to a jury trial (Doc. 4-3, p. 5).  Following a bench trial, on January 2007, the trial court found Varholick guilty of driving under the influence in violation of Ohio Rev. Code § 4511.19, a fourth degree felony as charged in Count One of the indictment.  Doc. 4-4.  The trial court found Varholick not guilty of drug possession, as charged

---

[4] As noted by the Eighth District Court of Appeals, "Varholick's name was inadvertently misspelled in the lower court record as 'Varholic.'"  *State of Ohio v. James Varholick*, 2011-Ohio-5277, 2011 Ohio App. LEXIS 4336, ** 1, n. 1 (Oct. 13, 2011).

4

in Count Two of the indictment.  Doc. 4-4.

**B.     2007 Sentencing**

On February 27, 2007,[5] the trial court sentenced Varholick to 30 months in prison, plus three years post release control, and a $1,000 fine.  Doc. 4-5.  Varholick's prison sentence was stayed pending appeal.  Doc. 4-5.  The trial court placed Varholick on supervised release, with conditions, while his appeal was pending.  Doc. 4-5.

**C.     Direct Appeal**

On March 28, 2007, Varholick, represented by counsel, filed a notice of appeal from the final order and sentence entered on February 27, 2007 (COA 89627).  Doc. 4-9.  Varholick's appellant's brief was filed on June 29, 2007.  Doc. 4-11.  He presented the following four assignments of error:

I.     Defendant was denied due process of law when the court riled [sic] that prior sentencing entries constituted proper proof of prior convictions.

II.    Defendant was denied due process of law when the court convicted him of driving while under the influence rather than having a physical control of the vehicle while under the influence.

III.   Defendant was denied due process of law when the court convicted defendant of being under the influence of alcohol.

IV.    Defendant was denied due process of law when there was a material variance between the allegations of the indictment and the verdict.

Doc. 4-11, pp. 2, 10-17.  On September 17, 2007, the State of Ohio filed its appellate brief. Doc. 4-12.  On April 2, 2008, the Eighth District Court of Appeals affirmed the judgment of conviction.[6]  Doc. 4-13, Doc. 4-14.  On March 17, 2008, Varholick filed a motion for reconsideration and motion for certification of conflict which the Eighth District Court of

---

[5] The sentencing journal entry was filed on February 27, 2007.  Doc. 4-5.

[6] The Eighth District Court of Appeals' Journal Entry and Opinion was released on March 6, 2008, and journalized on April 2, 2008.

Appeals denied on April 2, 2008.  Doc. 4-10, p. 1.

On May 12, 2008, Varholick, through counsel, filed a Notice of Appeal and Memorandum in Support of Jurisdiction with the Ohio Supreme Court.  Doc. 4-10, p. 1, Doc. 4-15, Doc. 4-16.  In his Memorandum in Support of Jurisdiction, Varholick raised the following four Propositions of Law:

> No. 1   A defendant has been denied due process of law when proof of a prior conviction failed to conform to the requirements of Rule 32(C) of the Ohio Rules of Criminal Procedure.
>
> No. 2   A defendant has been denied due process of law when the court has convicted a defendant of driving while under the influence of alcohol where he has been found seated in his vehicle.
>
> No. 3   A defendant has been denied due process of law where there is insufficient evidence to permit a rational factfinder to return a verdict of guilty.
>
> No. 4   A defendant has been denied due process of law where there has been a material variance between the allegations of the indictment and the verdict of the court.

Doc. 4-16, pp. 2, 7-12.  On September 10, 2008, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question.  Doc. 4-18.

**D.      2009 Resentencing**

In January 2009, the trial court resentenced Varholick.  Doc. 4-6.  The trial court resentenced Varholick to two years of community control under supervision of the Adult Probation Department.  Doc. 4-6.  The trial court imposed 60 days in county jail which Varholick was authorized to serve in Lake County Jail with the jail treatment program.  Doc. 4-6. His driver's license was suspended for three years to begin August 3, 2006.  Doc. 4-6.  The trial court ordered that, if Varholick remained violation free for one year, community control would terminate.  Doc. 4-6.  However, the trial court also ordered that, if Varholick violated the terms and conditions of supervision, more restrictive sanctions could be imposed or he could be

sentenced to a term of 30 months in prison.  Doc. 4-6.  The trial court imposed three years of post release control and ordered Varholick to pay a $200.00 fine.  Doc. 4-6.  Varholick did not appeal the 2009 resentencing.

**E.**     **Violation of Community Control Sanctions**

In July 2009, Varholick appeared in the trial court for a hearing on an alleged violation of community control sanctions.  Doc. 4-7.  The trial court found Varholick to be in violation of his community control sanctions.  Doc. 4-7.  The trial court terminated Varholick's community control sanctions and sentenced Varholick to a term of 30 months to be served in the Lorain Correctional Institution.  Doc. 4-7.  Post release control for three years was included as part of the sentence.  Doc. 4-7.   Varholick did not appeal from this decision.

**F.**     **Motion to Correct Sentence**

On April 22, 2010, Varholick, proceeding *pro se*, filed a Motion to Correct Improper Sentence (Doc.  4-3, p. 2) in which he asserted "Defendants sentence imposed January 2009 does not comport with the sentencing provisions as provided by law . . ." (Doc. 4-20, p. 1).[7]  After briefing, on February 4, 2011, the trial court summarily denied Varholick's motion.  Doc. 4-3, p. 1, Doc. 4-21, p. 2.

On February 28, 2011, Varholick filed a *pro se* notice of appeal in the Eighth District Court of Appeals from the trial court's February 4, 2011, denial of his motion to correct sentence.  Doc. 4-21.  On April 18, 2011, Varholick filed his appellate brief raising one assignment of error:

1.     Trial court was within proper authority and jurisdiction to review said claims.[8]

---

[7] The motion is not in the record but is described in Varholick's Response.  Doc. 4-20.

[8] According to the Court of Appeals, Varholick's assignment of error was apparently based on his assumption that the trial court denied his motion on jurisdictional grounds.  *See* Doc. 4-26, pp. 4-5.

Doc. 4-23, pp. 2,  4-6.  Varholick sought an order reversing and remanding to the trial court "with instructions to the trial court to review the claims herein as Mandated Law determined which is within the trials courts authority to do." Doc. 4-23, p. 5.  On May 4, 2011, the State of Ohio filed its appellate brief.  Doc. 4-24.  On May 18, 2011, Varholick filed a reply brief.  Doc. 4-25.  On October 13, 2011, the Eighth District Court of Appeals affirmed the trial court's denial of Varholick's motion to correct sentence.  Doc. 4-26.  On October 26, 2011, Varholick filed a motion for reconsideration.  Doc. 4-22, p. 1.  On November 7, 2011, the Eighth District Court of Appeals denied Varholick's motion for reconsideration.  Doc. 4-22, p. 1.

On November 22, 2011, Varholick filed a notice of appeal with the Ohio Supreme Court from the Eighth District Court of Appeals' October 13, 2011, judgment.  Doc. 4-27.  In his Memorandum in Support of Jurisdiction, Varholick presented one Proposition of Law:

1.  The trial court was within proper authority and jurisdiction to review said claims.

Doc. 4-29, pp. 2-9.   On February 22, 2012, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question.  Doc. 4-30.

## G.    Federal Habeas Corpus

On January 5, 2012, Varholick filed his Petition asserting two grounds for relief:

**Ground One:**[9]  Defendant was denied due process.

**Supporting Facts:** See attached "grounds raised in re: 89627"[10]

I.    Defendant was denied Due Process of law when the Court ruled that prior sentencing entries constituted proof of prior convictions
Documents submitted were not properly filled out or filed from previous OVI to support a charge of a higher degree.

---

[9] In Ground One, Varholick asserts four separate due process violations.  Doc. 1-1, p. 1.

[10] Case No. 89627 is the Eighth District Court of Appeals' case number for Varholick's direct appeal from the order and sentence entered on February 27, 2007.  Doc. 4-9.

8

II.    Defendant was denied Due Process of law when the court convicted him of driving while under the influence rather than having a physical control of the vehicle while under the influence

The court lacked sufficient evidence to convict for OVI based on officer's testimony that he only witnesses the defendant parked and never observed him driving or ingesting alcohol or a drug of abuse.

III.   Defendant was denied Due Process of law when the court convicted defendant of being under the influence of alcohol

The court lacked any direct evidence to prove that the defendant was in fact under the influence of alcohol at any time.

IV.    Defendant was denied Due Process of law when there was a material variance between the allegations of the indictment and the verdict

There is no direct evidence to support a conviction that the defendant "did" operate a vehicle while under the influence of alcohol, a drug of abuse, or a combination of them as charged in the indictment.

Doc. 1, p. 5, Doc. 1-1.

**Ground Two**: Denied Access to the Court
**Supporting Facts:** Trial court was within proper authority and jurisdiction to review said claims. (also see attachment).

Trial Court Was Within Proper Authority and Jurisdiction to Review Said Claims
Sentence imposed was contrary to law and not authorized by law.  Defendant filed a, "Motion to Correct Improper Sentence" to the trial court since it retains jurisdiction to correct a void sentence.  Trial court denied motion without any facts or conclusions of law.  Defendant appealed to the Appellate Court and was denied relief without addressing the issue or holding a hearing. Defendant is currently within the Supreme Court with decision pending and believes the court will not allow leave to appeal or address the Constitutionality of the void sentence since it has not been addressed thus far.  Thereby the defendant feels that the only proper relief he will receive lies within the Federal Courts.

Doc. 1, p. 7, Doc. 1-1.

### III. Law & Analysis

**A.    AEDPA statute of limitations**

Respondent contends that Varholick's  habeas petition is barred by the one-year statute of

limitations set forth in 28 U.S.C. § 2244(d).  The Antiterrorism and Effective Death Penalty Act

of 1996 (the "AEDPA"), 28 U.S.C. § 2244, limits the time within which a person in custody

pursuant to the judgment of a state court may file a petition for a federal writ of habeas corpus

and provides, in relevant part:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation shall run from the latest of --
>
>> (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>>
>> (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>>
>> (C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>>
>> (D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).  The statute of limitations is tolled for any period of time in which a

properly filed petition for post-conviction relief is pending before the state courts.  *Jurado v.

Burt,* 337 F.3d 638, 640 (6th Cir. 2003).  "[A]n application is pending so long as the ordinary

state collateral review process is 'in continuance.'"  *Carey v. Saffold*, 536 U.S. 214, 219-220

(2002); *see also Applegarth v. Warden North Cent. Correctional Inst.*, 377 Fed. Appx. 448, 449-

450 (6th Cir. 2010) (relying on *Carey* when concluding that, where an appeal was not taken to

the Ohio Supreme Court from the denial of a Rule 5(A) motion for delayed appeal, the AEDPA

was not tolled beyond the 45-day period in which the petitioner had to file an appeal).  "In other

words, until the application has achieved a final resolution through the State's post-conviction procedures, by definition it remains 'pending.'" *Id.* at 220.  This statutory tolling provision, however, does not "revive the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run.  Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations." *Vroman v. Brigano,* 346 F.3d 598, 602 (6th Cir. 2003) (internal quotations and citation omitted).

**B.      Varholick's  Petition is barred by the one-year statute of limitations**

       **1.      Varholick's Petition is untimely under 28 U.S.C. § 2244(d)(1)(A)**

Varholick was convicted in January 2007 and sentenced on February 27, 2007.  Doc. 4-4, Doc. 4-5.  The sentence was stayed pending appeal.  Doc. 4-5.  Varholick appealed from the final order and sentence entered on February 27, 2007.  Doc. 4-9.  The Ohio Court of Appeals affirmed the judgment and remanded the case for execution of sentence.  Doc. 4-14.  Varholick appealed to the Ohio Supreme Court.  Doc. 4-15.  That appeal ended with the Ohio Supreme Court declining jurisdiction on September 10, 2008.  Doc. 4-18.  Varholick then had 90 days in which to seek certiorari in the United States Supreme Court, i.e., until December 9, 2008.  *See* Sup. Ct. R. 13.  On January 9, 2009, the trial court resentenced Varholick.  Doc. 4-6.  Varholick had 30 days in which to appeal to the Ohio Court of Appeals.  Ohio App. R. 4(A).  He did not appeal.

Under 28 U.S.C. § 2244(d)(1)(A), Varholick's one-year statute of limitations began to run when "the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." *See* 28 U.S.C. § 2244(d)(1)(A).  Respondent asserts that the direct appeal period for Varholick's original judgment of conviction expired on December 9, 2008, or 90 days after the Ohio Supreme Court's September 10, 2008, entry declining jurisdiction.  Doc.

4, p. 13.  Respondent also asserts that, to the extent that the January 9, 2009, resentencing started

a new statute of limitations period, it did so only with respect to challenges stemming from the

resentencing itself, not with respect to challenges involving the underlying conviction.  Doc. 4, p.

13 (relyng in part on *Bachman v. Bagley*, 487 F.3d 979, 982-985 (6th Cir. 2007)).  In any event,

Respondent contends that, considering all claims presented in Varholick's federal habeas

Petition, the one-year statute of limitations started to run, at the latest, on February 9, 2009, 30

days after Varholick's January 9, 2009, resentencing.  Doc. 4, p. 13.

     Varholick has not presented a response to the statute of limitations issue raised by

Respondent and does not argue that any date other than the latest date suggested by the

Respondent should be used as the starting point for commencement of the statute of

limitations.[11]  As set forth below, Varholick's Petition is untimely under 28 U.S.C. §

2244(d)(1)(A) even if the latest date suggested by Respondent is used for calculating the statute

of limitations.

     The latest of the two possible dates to use as the starting point for the statute of

limitations is the January 9, 2009, date the resentencing judgment was entered.  From that entry,

Varholick had 30 days to appeal from the resentencing or until February 8, 2009.  *See* Ohio App.

R. 4(A).  However, he took no appeal from the January 9, 2009, resentencing judgment entry.

Therefore, "the date on which the judgment became final by the conclusion of direct review or

the expiration of the time for seeking such review" (28 U.S.C. § 2244(d)(1)(A)) was 30 days

later, i.e., February 8, 2009, and the AEDPA statute of limitations began running on February 9,

2009.  Thus, absent statutory tolling under 28 U.S.C. § 2244(d)(2), Varholick had one year from

that date, or until February 9, 2010, in which to file his federal habeas corpus petition.

---

[11] Varholick's only contention is that, since Respondent alternatively argued the merits, this Court should entertain
the merits of his Petition.  Doc. 5.  However, as discussed herein, Varholick's Petition is time-barred.  Thus, the
Court need not address those alternative arguments.

Varholick's habeas Petition was officially filed with the district court on January 5, 2012. Doc. 1.   However, in his Petition, Varholick certified that he placed it in the prison mailing system on December 27, 2011.  Doc. 1, p. 15.  "Under the mailbox rule, a habeas petition is deemed filed when the prisoner gives the petition to prison officials for filing in the federal courts." *Cook v. Stegall,* 295 F.3d 517, 521 (6th Cir. 2002) (citing *Houston v. Lack,* 487 U.S. 266, 273 (1988)).  Even if Varholick is given the benefit of the prison mailbox rule based on his statement in his Petition, his Petition was filed on December 27, 2011, almost two years after the expiration of the statute of limitations.  Thus, absent tolling of the statute of limitations, his Petition is time-barred.  However, as discussed below, neither statutory nor equitable tolling applies to extend the statute of limitations.

### 2.  Varholick is not entitled to statutory tolling of the statute of limitations

A properly filed petition for post-conviction relief "can only serve to pause a clock that has not yet fully run.  Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations."  *Vroman ,* 346 F.3d at 602 (discussing 28 U.S.C. § 2244(d)(2)) (internal citation omitted).  Although Varholick filed a motion to correct sentence on April 22, 2010, that motion was filed after the statute of limitations had already expired.  Thus, that motion, even if deemed "properly filed," did not serve to pause the statute of limitations nor does it restart the statute of limitations.[12]

Accordingly, Varholick's Petition is untimely under 28 U.S.C. § 2244.

---

[12] Respondent notes that, if the statute of limitations was tolled during the time period that Varholick could have appealed from the trial court's July 28, 2009, entry finding that Varholick had violated the terms of his community control sanction, the statute of limitations would have nonetheless expired on March 11, 2010, prior to the April 22, 2010, motion to correct sentence.  Doc. 4, p. 13.  Since Varholick presents no argument with respect to the impact, if any, of the community control violation judgment entry on the running of the statute of limitations, it is not necessary for the Court to address whether such a proceeding would serve to toll the statute of limitations.

3.      **Varholick is not entitled to equitable tolling of the statute of limitations**

The AEDPA's statute of limitations is subject to equitable tolling. *Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 749 (6th Cir. 2011) (citing *Holland v. Florida*, ___ U.S.___, 130 S.Ct. 2549, 2560, 177 L.Ed.2d 130 (2010)). Equitable tolling allows courts to review time-barred habeas petitions "provided that 'a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control.'" *Robinson v. Easterling*, 424 Fed. Appx. 439, 442 (6th Cir. 2011), *cert. denied*, ___U.S.___, 132 S.Ct. 456, 181 L.Ed.2d 297 (2011) (quoting *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010)). There are two forms of equitable tolling: (1) *traditional* equitable tolling; and (2) *actual innocence* equitable tolling. As discussed below, a petitioner, by satisfying the *Holland* two-part test, may be entitled to traditional equitable tolling. Additionally, a petitioner may be entitled to actual innocence equitable tolling. However, for the reasons set forth below, Varholick is entitled to neither form of equitable tolling.

a.  **Varholick is not entitled to traditional equitable tolling**

A habeas petitioner is entitled to equitable tolling only if he establishes that (1) "he has been pursuing his rights diligently;" and (2) "some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 130 S.Ct. at 2562. Equitable tolling is granted sparingly and is evaluated on a case-by-case basis, with the petitioner retaining the "ultimate burden of persuading the court that he or she is entitled to equitable tolling." *Ata v. Scutt,* 662 F.3d 736, 741 (6th Cir. 2011).[13] Varholick has failed to argue, much less demonstrate, that he is entitled to

---

[13]  Although the Sixth Circuit previously utilized a five-factor approach in determining whether a habeas petitioner is entitled to equitable tolling, *Holland's* two-part test has replaced the five-factor inquiry as the "governing framework" to apply. *Hall*, 662 F.3d at 750 (citing *Robinson v. Easterling*, 424 F. Appx. 439, 442 n. 1 (6th Cir. 2011), *cert. denied*, ___U.S.___, 132 S.Ct. 456, 181 L.Ed.2d 297 (2011)). "With *Holland* now on the books, the

traditional equitable tolling under the two-part test outlined in *Holland*.  Varholick has not

shown, and there is no evidence in the record to establish, that he was prevented by some

extraordinary circumstance from seeking habeas relief in a timely manner.  Thus, Varholick is

not entitled to traditional equitable tolling of the statute of limitations under the *Holland* two-part

test.

### b.  Varholick  is not entitled to actual innocence equitable tolling

In addition to equitable tolling under the traditional two-part test outlined above, "a

petitioner may also be eligible for equitable tolling if he demonstrates actual innocence so that by

refusing to consider his petition due to timeliness the court would cause a fundamental

miscarriage of justice."  *Patterson v. Lafler*, 455 Fed. Appx. 606, 609 (6th Cir. 2012).  "A valid

claim of actual innocence requires '*new* reliable evidence—whether it be exculpatory scientific

evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented

at trial."  *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)) (emphasis supplied).  "The

evidence must demonstrate factual innocence, not mere legal insufficiency."  *Id.* (citing *Bousley

v. United States*, 523 U.S. 614, 623 (1998)).  The Supreme Court recently underscored the fact

that, "the miscarriage of justice exception . . . applies to a *severely confined category*: cases in

which new evidence shows 'it is more likely than not that no reasonable juror would have

convicted the petitioner.'"  *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1933 (2013) (quoting *Schulp*,

513 U.S. at 329) (emphasis supplied).

---

'extraordinary circumstances' test, which requires both reasonable diligence and an extraordinary circumstance, has become the law of this circuit."  *Hall*, 662 F.3d at 750; *see also Patterson v. Lafler*, 455 Fed. Appx. 606, 609, n. 1 (6th Cir. 2012).

Varholick has failed to demonstrate that he is entitled to equitable tolling based on actual innocence.[14]  Thus, Varholick is not entitled to equitable tolling based on actual innocence.

Accordingly, for the reasons set forth above, the undersigned concludes that Varholick is not entitled to equitable tolling of the statute of limitations under either traditional or actual innocence equitable tolling principles.

### IV. Conclusion and Recommendation

For all of the reasons stated above, the undersigned concludes that Petitioner James Varholick's Petition is barred by the one-year statute of limitations.  Varholick's Petition was not timely filed under 28 U.S.C. § 2244(d)(1) and he is not entitled to statutory or equitable tolling.  Accordingly, the undersigned recommends that the Court **DENY** Petitioner James Varholick's Petition (Doc. 1).  Petitioner's request for an evidentiary hearing contained in his Traverse (Doc. 5) is **DENIED** as moot.

Dated: October 31, 2014

Kathleen B. Burke
United States Magistrate Judge

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); s*ee also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

---

[14] At the conclusion of his Traverse, Varholick requests that the Court "grant relief as to prevent a Miscarriage of Justice and Denial of Constitutional Rights from occurring."  Doc. 5, p. 4.  Yet, he has not demonstrated a basis for equitable tolling.